# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **HAROLD SCHAFFER, # 114739,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:24-cv-00741** |
| | ) | |
| **CALEB HUDGENS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Harold Schaffer, who is in Tennessee Department of Correction custody, filed a pro se Complaint alleging violations of his civil rights at the Riverbend Maximum Security Institution. (Doc. No. 1). He has since been transferred to West Tennessee State Penitentiary. (Doc. No. 6). The Complaint is now before the Court for initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2), 1915A.

## I. FILING FEE

Schaffer filed an Application for Leave to Proceed In Forma Pauperis ("IFP Application") (Doc. No. 2). Under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). From a review of Schaffer's IFP Application and supporting documentation, it appears that Schaffer lacks sufficient financial resources from which to pay the full filing fee in advance. Therefore, his IFP Application (Doc. No. 2) will be granted.

Under § 1915(b), Schaffer nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder

1

in installments. Accordingly, Schaffer is hereby assessed the full civil filing fee of $350, to be paid as follows:

(1) The custodian of Schaffer's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Schaffer's account; or (b) the average monthly balance in Schaffer's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust fund officer must withdraw from Schaffer's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Schaffer's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Schaffer's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** send a copy of this Order to the administrator of inmate trust fund accounts at the West Tennessee State Penitentiary to ensure that the custodian of Schaffer's inmate trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Schaffer is transferred from his present place of confinement, the custodian of his

inmate trust fund account **MUST** ensure that a copy of this Order follows Schaffer to his new place of confinement for continued compliance.

## II. PLRA SCREENING STANDARD

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," id. § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). Id. § 1915A(b).

The court must construe a pro se complaint liberally, United States v. Smotherman, 838 F.3d 736, 739 (6th Cir. 2016) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)), and accept a plaintiff's factual allegations as true unless they are entirely without credibility. See Thomas v. Eby, 481 F.3d 434, 437 (6th Cir. 2007) (citing Denton v. Hernandez, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## III. FACTUAL ALLEGATIONS

Schaffer names 13 Defendants, including the Tennessee Department of Correction and 12 Tennessee Department of Correction employees. Officer Caleb Hudgens, Officer Claude Hudgens, Officer Steven White, Officer Dakota Taylor, Officer Madison Campbell, Captain

William Green, S.T.G. Coordinator Bobby Spyres, Special Agent in Charge Walt Chudzik, Investigator Danielle Jackson, Warden Zachary Pounds, and Assistant Commissioner of Prisons Linda Thomas are all sued in their official and individual capacities. (Doc. No. 1 at 2−5). Commissioner Frank Strada is sued in his official capacity for injunctive relief only. (Id. at 3−4).

Schaffer alleges that Officer Caleb Hudgens, Officer Claude Hudgens, Officer Campbell, Officer White, and Officer Taylor are members of the Correctional Emergency Response Team ("CERT"). (Doc. No. 1 at 8). According to Schaffer, the CERT Officers regularly use excessive force against inmates. (Id. at 26−29).

Schaffer alleges that on June 29, 2023, the CERT Officers, along with S.T.G. Coordinator Spyres and Captain Green, used force against him during and following a cell extraction, as summarized below:

- Officer Caleb Hudgens pushed Schaffer, causing his throat to strike a metal bunk bed.

- Officer Caleb Hudgens and S.T.G. Coordinator Spyres pushed Schaffer against a metal ping pong table.

- S.T.G. Coordinator Spyres choked Schaffer with his shirt.

- All seven of these Defendants dropped Schaffer on his face twice from a height of approximately two feet onto a sidewalk, with his hands restrained behind his back.

- Officer Caleb Hudgens stood or knelt on Schaffer's surgically repaired knee, deliberately causing pain.[1]

(Id. at 12−20). Medical staff documented Schaffer's injuries. (Id. at 20−21). Schaffer alleges that he complied with all orders and did nothing to provoke the exercise of force. (Id. at 12−14).

---

[1] Schaffer also alleges that S.T.G. Coordinator Spyers addressed him with a racial slur. (Doc. No. 1 at 17).

4

Schaffer further alleges that the CERT Officers destroyed or confiscated his property, including a television set, prison clothes, and a picture of Schaffer with his parents and daughter. (Id. at 21−22).

Schaffer requested an internal affairs investigation of the incident. (Id. at 24). Investigator Jackson and Special Agent in Charge Chudzik were in charge of the investigation. (Id. at 25−26). Warden Pounds and Assistant Commissioner Thomas were aware of the investigation. (Id. at 25). The results of the investigation were not reported to Schaffer. (Id. at 25). Schaffer alleges that the Officers involved in the incident have not faced any consequences. (Id.).

Schaffer alleges that after the June 2023 incident, CERT Officers continued to target him. (See id. at 30−31 (alleging that Officer White twice falsely reported him as a "snitch" so that Schaffer would be attacked by other inmates), 32 (alleging that Officer Campbell wrote a false disciplinary infraction against him), 32−33 (alleging that Officers Taylor, White, and Hudgins "tossed" his cell in violation of prison rules governing cell inspections).

## IV.    ANALYSIS

Schaffer asserts several state and federal claims against each Defendant. (Doc. No. 1 at 35−60). The Court will first address Schaffer's official-capacity claims together before addressing each category of individual-capacity claims separately.

### A.  Official-Capacity Claims

Schaffer's official-capacity claims for injunctive and declaratory relief are moot because he is no longer in custody at Riverbend Maximum Security Institution. See Parks v. Reans, 510 Fed. Appx. 414, 415 (6th Cir. Jan. 7, 2013) ("A prisoner's request for injunctive and declaratory relief [based on conditions of confinement] is moot upon his transfer to a different facility."). Additionally, Schaffer may not bring official-capacity claims for damages against any

5

Defendant because all Defendants are state officials who are not subject to such claims under Section 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).

Accordingly, Schaffer's official-capacity claims against all Defendants will be dismissed as moot. Because Schaffer has sued Commissioner Strada and the Tennessee Department of Correction in their official capacities only, all claims against these Defendants are dismissed.

### B. Excessive Force and Failure to Protect

Schaffer asserts that CERT Officers Caleb Hudgens, White, Campbell, and Taylor, as well as Captain Green and S.T.G. Coordinator Spyres used excessive force against him and failed to protect him from excessive force at the hands of other officers. (Doc. No. 1 at 35−55). Schaffer further asserts that CERT Officer Claude Hudgens failed to protect him form excessive force. (Id. at 55).

"[A] claim of excessive force has both an objective and a subjective component. The official must have acted with a sufficiently culpable state of mind, and the alleged wrongdoing must be objectively harmful enough to establish a constitutional violation." Gunther v. Castineta, 561 Fed. Appx. 497, 503 (6th Cir. 2014). Here, Schaffer alleges that the Defendants each participated in dropping him twice from a height of two feet onto a sidewalk while his hands were restrained behind his back. (Doc. No. 1 at 17, 19). Assuming these allegations to be true, Schaffer has alleged viable Eighth Amendment claims based on excessive force. These claims will proceed against CERT Officers Caleb Hudgens, White, Campbell, and Taylor, as well as Captain Green and S.T.G. Coordinator Spyres, in their individual capacities.

To state an Eighth Amendment claim based on a prison official's failure to intervene, Ross must allege that the Defendant "observed or had reason to know that excessive force would be or was being used *and* had both the opportunity and the means to prevent the harm from occurring."

6

Burgess v. Fischer, 753 F.3d 462, 475 (6th Cir. 2013) (quotation marks and citation omitted). Here, Schaffer alleges facts from which the Court may infer that Defendants were present and in a position to stop multiple instances of excessive force. His Eighth Amendment failure-to-protect claims will proceed against CERT Officers Caleb Hudgens, Claude Hudgens, White, Campbell, and Taylor, as well as Captain Green and S.T.G. Coordinator Spyres, in their individual capacities.

### C. Destruction of Property

Schaffer asserts that the CERT Officers destroyed his property without due process. (Doc. No. 1 at 35−56). The Due Process Clause of the Fourteenth Amendment prohibits public officers from unlawfully taking a person's property. However, even a state official's intentional destruction of a prisoner's property does not give rise to a due process claim unless no adequate post-deprivation remedy is available. Hudson v. Palmer, 468 U.S. 517, 536 (1984). "[T]he state of Tennessee does provide an adequate post-deprivation remedy for takings of property" McMillan v. Fielding, 136 Fed. Appx. 818, 820 (6th Cir. 2005); see Tenn. Code Ann. § 9-8-307, et seq. (establishing process for bringing claims before the Tennessee Claims Commission). Schaffer does not allege that he brought a claim to the Tennessee Claims Commission or that the process to do so was inadequate. He has therefore failed to state a viable Fourteenth Amendment claim based on destruction of property, and all such claims will be dismissed.

If Schaffer wishes to pursue these claims, he may file an amended complaint alleging additional facts regarding his attempt to pursue Tennessee's post-deprivation procedures. If Schaffer files an amended complaint, he must comply with Local Rule 15.01(b) and ensure that the amended complaint includes **all** allegations and claims against **all** Defendants he wishes to pursue.

### D. Failure to Investigate and Denial of Access to Courts

Schaffer asserts that all Defendants conspired to cover up the events of June 29, 2023. (Doc. No. 1 at 37−60). He asserts that the cover-up violates the First, Fifth, Eighth, and Fourteenth Amendments. (Id.).

A prison official's inadequate investigation of alleged misconduct "[has] no bearing on the alleged violation . . . that occurred *prior* to the investigation." Frodge v. City of Newport, 501 Fed. Appx. 519, 533 (6th Cir. 2012). "[F]ailure to discipline and failure to act[] do not constitute 'active constitutional behavior' as required [for liability under Section 1983] and thus, are not actionable." Id. at 532; Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999) ("A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views.").

However, an official "cover-up" may be actionable under the First Amendment if it prevented a plaintiff from meaningful access to courts. Flagg v. City of Detroit, 715 F.3d 165, 174 (6th Cir. 2013). To state such a claim, a plaintiff must allege "(1) a non-frivolous underlying claim; (2) obstructive actions by state actors; (3) substantial prejudice to the underlying claim that cannot be remedied by the state court; and (4) a request for relief which the plaintiff would have sought on the underlying claim and is now otherwise unattainable." Id. (citations, brackets, and quotation marks omitted). Here, Schaffer has not alleged any active obstructive conduct. Nor has he alleged prejudice to a non-frivolous claim that he can no longer raise. He has therefore failed to allege a viable claim based on denial of access to courts.

If Schaffer wishes to pursue these claims, he may file an amended complaint alleging additional facts regarding the Defendants' obstructive conduct and any resulting prejudice to a non-frivolous legal claim. If Schaffer files an amended complaint, he must comply with Local

Rule 15.01(b) and ensure that the amended complaint includes **all** allegations and claims against **all** Defendants he wishes to pursue.

### E. State-Law Claims

Schaffer asserts claims under the Tennessee Constitution for "unnecessary rigor," cruel and unusual punishment, and deprivation of property (Doc. No. 1 at 35−60). He also asserts state-law negligence claims. (Id.). These claims will proceed against CERT Officers Caleb Hudgens, White, Campbell, and Taylor, as well as Captain Green and S.T.G. Coordinator Spyres.

All state-law claims asserted against Special Agent in Charge Chudzik, Investigator Jackson, Warden Pounds, or Assistant Commissioner Thomas are based on these Defendants' failure to investigate the events of June 29, 2023. (See id. at 57−60). But Schaffer does not allege any cognizable injury based on the failure to investigate. Accordingly, all state-law claims against these Defendants will be dismissed.

### V.    CONCLUSION

The IFP Application (Doc. No. 2) is **GRANTED**.

The court has screened the Complaint pursuant to the PLRA.

The following claims **SHALL PROCEED**: Eighth Amendment excessive force, Eighth Amendment failure to protect, and state-law constitutional and negligence claims against Caleb Hudgens, Steven White, Madison Campbell, Dakota Taylor, Bobby Spyres, William Green, and Claude Hudgens, all in their individual capacities.

All other claims, including all official-capacity claims, are **DISMISSED**. The Clerk is **DIRECTED** to terminate Walt Chudzik, Danielle Jackson, Zachary Pounds, Linda Thomas, Frank Strada, and Tennessee Department of Correction as Defendants on the docket.

The Clerk is **DIRECTED** to send the plaintiff service packets (a blank summons (AO 440) and USM 285 form) for Defendants Caleb Hudgens, Claude Hudgens, Steven White, Madison Campbell, Dakota Taylor, Bobby Spyres, and William Green. Schaffer **MUST** complete the service packet and return it to the Clerk's Office within **30 DAYS** of the entry of this order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packet, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on the Defendant. Fed. R. Civ. P. 4(b) and 4(c)(3).

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), this action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pre-trial, non-dispositive motions, to issue a Report and Recommendation on all dispositive motions, and to conduct further proceedings, if necessary, under Rule 72(b), Fed. R. Civ. P., and the Local Rules of Court. Despite the issuance of process, the Magistrate Judge may sua sponte recommend the dismissal of any claim for the reasons set forth in 28 U.S.C. § 1915(e)(2).

Schaffer is forewarned that this action may be dismissed if he fails to apprise the Court of any address changes.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE